**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 1:CR-05-214** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **WALTER HIMMELREICH,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

**I.     Introduction**

On June 1, 2005, a Grand Jury returned a three-count indictment charging Defendant

Walter Himmelreich with:  (i) knowingly permitting his minor child to engage in sexually

explicit conduct for the purpose of producing visual depictions of such conduct using materials

that were shipped and transported in interstate and foreign commerce, in violation of 18 U.S.C. §

2251(b); (ii) knowingly receiving and distributing child pornography in violation of 18 U.S.C. §

2252A(a)(2); and (iii) knowingly possessing child pornography that had been mailed, shipped,

and transported in interstate and foreign commerce, in violation of 18 U.S.C. § 2252A(a)(5)(B).

(Doc. No. 1.)  On April 19, 2006, the Grand Jury returned a superseding indictment, charging

Defendant with an additional count of knowingly using a facility and means of interstate

commerce to attempt to persuade, induce, entice, and coerce a minor to engage in a sexual

activity for which any person can be charged with a criminal offense, and aiding and abetting the

same.  (Doc. No. 63.)

On October 21, 2005, Defendant filed three pretrial motions seeking to dismiss the

indictment for violation of the Speedy Trial Act pursuant to 18 U.S.C. § 3161(b); seeking to

suppress statements given while in custody; and seeking to suppress evidence discovered during

a search of his vehicle.  (Doc. Nos. 29, 31, 33.)  On March 29, 2006, the Court held an

evidentiary hearing to consider each of the motions.  The Government filed a consolidated brief

in opposition to each of the motions on April 14, 2006.  (Doc. No. 61.)  Defendant filed a reply

on April 19, 2006.  (Doc. No. 62.)

II.     **Factual Background**[1]

        Between January and November, 2004, Defendant engaged in numerous internet chatting

sessions under the screen name "walthpa" with an interlocutor he believed to be a mother willing

to make her two minor daughters available for sex acts with Defendant.  (Tr. 53.)  During these

chats, Defendant provided graphic details regarding the sexual activities he sought to engage in

with these minor girls, and also various sex acts he had engaged in with his six-year-old

daughter.  (Tr. 54.)  Defendant described using anal lubricants, dildos, condoms, and bananas in

the sex acts.  (Tr. 54)  During the course of these chat sessions, Defendant agreed to meet his

chat correspondent and her daughters at a restaurant in Delaware County, Pennsylvania, on

November 9, 2004, with a stated plan of engaging in sexual activity with the girls.  (Tr. 53-54.)

Defendant further agreed to bring to this meeting sex toys, wine, condoms, bananas, and

lubricant.  (Tr. 54.)

        Unbeknownst to Defendant, the individual he believed was a mother willing to make her

minor children available to Defendant for sexual activity was in fact undercover law enforcement

officer Michelle Deery.  At all times during these chats, Ms. Deery was an agent with the

---

[1]        The following factual information is derived from evidence and testimony
presented during the evidentiary hearing held March 29, 2006.  Although certain testimony was
conflicting, the factual background provided herein represents evidence and testimony the Court
has credited following consideration of all the evidence presented.

Pennsylvania Office of the Attorney General assigned to the Delaware County District Attorney's Office Internet Crimes Against Children ("ICAC") Task Force.[2]  (Tr. 38-39.)  Created in 1999, the Delaware County ICAC Task Force is one of 45 such task forces throughout the United States.  (Tr. 7.)  Lieutenant David C. Peifer of the Delaware County District Attorney's Office Criminal Investigation Division supervises the ICAC Task Force and testified regarding the ICAC Task Force's funding and criminal investigative functions.  (Tr. 6-7.)

The ICAC Task Force receives Federal grant funding through the Office of Juvenile Justice and Delinquency Prevention in Washington, D.C., which provides funds to support state and local law enforcement efforts in the investigation of crimes against children committed through use of the Internet.  (Tr. 9.)  In certain cases, the ICAC Task Force will coordinate its investigative efforts with Federal agencies.  (Tr. 11-12.)  However, no Federal agency has involvement in the executive committees of ICAC task forces, and all investigations are coordinated and supervised by the local task force.  (Tr. 13.)  With respect to the investigation into Defendant's conduct through his eventual arrest on November 9, 2004, only the Delaware County ICAC Task Force and a local police department were involved.  (Tr. 14.)

On November 9, 2004, Defendant drove from his home in York County, Pennsylvania, to an Applebee's Restaurant in Delaware County, Pennsylvania, where he planned to meet a mother

---

[2]      Deery is now a Detective and will be referred to by her current rank in this memorandum.

and her two minor children.[3]  (Tr. 42-43.)  Defendant left his vehicle and began walking toward

the restaurant, at which point he was placed under arrest by ICAC Task Force officers.  (Tr. 42.)

While Defendant was being secured, Detective Deery looked in the passenger-side window of

Plaintiff's vehicle and observed wine bottles and bananas, two items Defendant referred to in his

chat sessions.  (Tr. 54.)  Following his arrest, Defendant's vehicle was impounded and an

inventory search conducted.  (Tr. 56-57.)  While in custody, Defendant was asked for consent to

search his vehicle prior to the inventory search being conducted.  Defendant signed a written

consent.  (Tr. 56.)  A subsequent search of Defendant's vehicle yielded dildos, condoms, and

lubricant, all items that Defendant stated that he would bring to his planned encounter with the

mother and her two minor daughters.  (Tr. 57-58.)

Following his arrest, Himmelreich was transported to the Delaware County District

Attorney's Office Criminal Investigation Division at the county courthouse in Media,

Pennsylvania.  (Tr. 17.)  While in custody, Defendant was given Miranda warnings.  (Tr. 20.)

After Defendant waived his rights, he was interviewed by Lieutenant Peiffer and Detective

Deery.  (Id.)  After this interview was complete, investigating officers had Defendant make a

recorded statement to memorialize the interview.  (Id.)  At the beginning of this taped statement,

Defendant was once again advised of his constitutional right to remain silent and to have an

attorney present, and he executed a form to indicate that he understood and waived these rights.

(Id. 20, 107-09; Def. Ex. 2.)  As indicated on the transcript of this recorded statement, Defendant

---

[3]        Plaintiff testified that he was actually en route to Atlantic City, New Jersey, and
had stopped at the Applebee's Restaurant only to advise the mother that he was unwilling to
follow through with their planned sexual activities with the children.  No other evidence
presented supports Defendant's testimony in this regard, and the Court does not credit
Defendant's statements.

acknowledged that he was proceeding without an attorney present and he proceeded to provide a statement.[4]  (Tr. 20; Def. Ex. 2.)

During the recorded interview, Defendant admitted that he had engaged in Internet chats during which he discussed engaging in sex acts with persons he believed to be children.  (Tr. 31.) Defendant also admitted that he had taken nude pictures of his six-year-old daughter, and that he had engaged in oral-genital contact with her, and that there had been instances in which she had oral-genital contact with him through his clothing while he had an erection.  (Tr. 28.)  Defendant discussed with officers possessing a "doctor's kit" that was used to play with his daughter during the sexual contacts.[5]  (Tr. 29-30.)  Although Defendant claimed that he stopped at the Applebee's Restaurant in Delaware County, Pennsylvania, on November 9, 2004 only to advise his internet chat partner that he was unwilling to go through with their plan, he acknowledged that he had in his possession all of the items that he described in his Internet chat sessions – namely, lubricants,

---

[4]        Defendant has attempted to persuade the Court that because in one recorded statement he said, "I understand, I understand, I don't have counsel at this point" that this should be interpreted as reflecting "to some degree" his concern over the absence of counsel.  (Doc. No. 62, at 1.)  The Court finds this interpretation of the statement to be unpersuasive and not supported by any other credible evidence presented.  Similarly, the Court does not credit Defendant's own testimony that he requested counsel on at least five separate occasions, nor does the Court credit Defendant's allegation that Lieutenant Peiffer actually erased a portion of Defendant's recorded statement where Defendant alleges that he demanded an attorney.  (Tr. 111.)  Defendant's testimony and allegations stand in stark contrast to sworn testimony and other evidence presented to the Court, all of which confirm that Defendant knowingly waived his right to counsel before voluntarily making a custodial statement to officers.

[5]        During his testimony, Defendant maintained that he purchased the doctor's kit as a toy for his daughter to use when she visited him.

condoms, dildos, bananas, and wine.[6]  (Tr. 30-31.)  Defendant telephoned Detective Deery

several times while he was en route to the Applebee's Restaurant.

Based on all of the foregoing information and statements, Detective Deery prepared an

affidavit in support of criminal charges against Defendant in Delaware County.  (Tr. 49.)

Detective Deery forwarded her affidavit to York County Detective Jeffrey Martz, who used the

information in support of an application for a warrant to search Defendant's York County

residence.  (Tr. 51-52.)

III.    **Discussion**

    A.    **Motion to Dismiss Indictment**

Defendant has moved to dismiss the indictment pursuant to 18 U.S.C. § 3161(b),

charging that the delay between his arrest by state law enforcement authorities and his eventual

indictment by the United States should be considered a violation of the Speedy Trial Act.

Specifically, Defendant argues that because he was arrested by law enforcement officers working

for a State task force that receives Federal funding and training, and that frequently coordinates

with Federal law enforcement in the investigation and prosecution of child pornography crimes,

his initial arrest and detention should be considered a Federal matter subject to the Speedy Trial

Act, 18 U.S.C. § 3161(b).  Defendant has offered no legal authority to support this argument, and

the Court finds it to be meritless.

The evidence of record demonstrates that there was no Federal agency involvement in the

investigation of Defendant's activities through his eventual arrest, aside from the grant funding

---

[6]       Defendant testified that he had brought a dildo, a "wine cap that looks like a dildo", condoms, and lubricant that were for his personal use.  Additionally, Defendant testified that the bananas were to be a snack for his own consumption.  (Tr. 104-06.)

contributed to the ICAC Task Force by the Office of Juvenile Justice and Delinquency

Prevention in Washington, D.C.  Defendant has not offered, and the Court has not found, any

case law to support the theory that this limited financial involvement on the part of the Federal

government in the funding of the ICAC Task Force is sufficient to deem a local law enforcement

task force a Federal agency, or otherwise cause investigations and arrests conducted by such task

force to be subject to the provisions of the Speedy Trial Act.  Accordingly, Defendant's motion

to dismiss the indictment will be denied.

### B.      Motion to Suppress Custodial Statements

Defendant claims that his constitutional rights were violated after he invoked his Fifth

Amendment right against self incrimination on five separate occasions while in custody, but that

his requests were ignored.[7]  (Tr. 111.)  Defendant contends that information obtained from

custodial interrogation, after his requests for counsel were ignored, were included in a probable

cause affidavit supporting the search of his residence and the seizure of physical evidence

therefrom.  (Doc. No. 32, at 2.)  Defendant seeks suppression of the statements and of the seizure

of the items obtained from a search of his home.

Defendant and the United States agree that the Fifth Amendment operates to protect

individuals against self-incrimination, and that in order to use statements made while a defendant

is in custody, the Government must demonstrate that it scrupulously honored a defendant's

---

[7]      Defendant's motion to suppress statements and the brief offered in support thereof
did not specify when he requested counsel, nor the number of times he now maintains his
requests were ignored by law enforcement personnel.  During his testimony, Defendant alleged
for the first time that he had requested counsel on five separate occasions while he was in
custody, and further alleged that Lieutenant Peiffer actually erased a portion of Defendant's
recorded statement in which Defendant claims he requested an attorney.  The Court does not
credit this testimony.

request for counsel, and that any evidence derived from such custodial statements was obtained

in strict compliance with <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), or otherwise satisfies one of

the exceptions to <u>Miranda</u>.

The United States Court of Appeals for the Third Circuit has provided the following

guidelines that district courts should follow when determining whether a custodial statement was

voluntarily given:

> A statement is voluntary if, when viewed in the totality of the
> circumstances, it is the product of an essentially free and
> unconstrained choice by its maker.  If an individual's will is
> overborne or that person's capacity for self-determination is
> critically impaired, her or his statements are involuntary.  A
> suspect's background and experience, including prior dealings with
> the criminal justice system, should be taken into account in the
> voluntariness inquiry.  A necessary predicate to a finding of
> involuntariness is coercive police activity.  Further, there must be
> some causal connection between the police conduct and the
> confession.  The burden is on the Government to establish, by a
> preponderance of the evidence, that a challenged statement was
> voluntary.

<u>United States v. Jacobs</u>, 431 F.3d 99, 108 (3d Cir. 2005) (internal citations omitted).  Following

careful consideration of the evidence presented during the hearing before this Court on March 29,

2006, the Court can only conclude that the totality of the circumstances demonstrate that

Defendant's statements were voluntarily given and in compliance with <u>Miranda</u>.

The evidence reveals that Defendant signed a consent form indicating his willingness to

talk with investigators.  (Tr. 107-09.)  Defendant acknowledged that he did not have counsel, and

proceeded to give a statement to law enforcement officers.[8]  (Id.; Def. Ex. D.)  Detective Deery

and Lieutenant Peifer each testified that at no time during his custodial interview did

Himmelreich invoke his right to counsel or the right to remain silent.  (Tr. 20, 49.)  The Court

also notes that Defendant is well-educated, having earned two bachelor degrees and a masters

degree.  (Tr. 107-08.)  He previously worked as an auditor with the Internal Revenue Service.

(Tr. 83, 100.)  Moreover, Defendant has had some degree of professional and personal

experience with the legal system, and even worked in a part-time capacity selling prepaid legal

services.  (Tr. 92-93.)  Although Defendant claims that he signed the consent form under duress

and even alleges that Lieutenant Peifer erased a portion of the recorded statement during which

Defendant insists he requested counsel, the totality of the evidence presented does not support

Defendant's allegation.  To the contrary, the record reflects that Defendant – a well-educated

individual, familiar with the legal process – knowingly, voluntarily, and intelligently waived his

Fifth Amendment right against self-incrimination when he offered a custodial statement to law

enforcement officers.  Upon consideration of the testimony presented, the Court does not credit

Defendant's testimony that he invoked his rights to counsel on five separate occasions following

his arrest, nor does the Court credit his allegation that Lieutenant Peiffer destroyed evidence and

otherwise ignored Defendant's alleged requests for counsel.  Accordingly, Defendant's motion to

---

[8]      As noted above, the Court does not credit Defendant's characterization of this
statement as demonstrating that he was "to some degree" concerned about his lack of counsel.
Other than Defendant's self-serving interpretation of this statement offered in his reply brief, the
Court finds no evidence or circumstances that support this characterization of a statement that
otherwise appears nothing more than an acknowledgment that Defendant was not represented by
counsel at that point.  That Defendant then proceeded to give a lengthy statement to investigating
officers, in which Defendant never requests counsel nor expresses any concern regarding his lack
of counsel, further undercuts Defendant's characterization of this lone statement.

suppress these statements will be denied.

### C.    Motion to Suppress Evidence

1.    Warrantless Search of Defendant's Vehicle

Defendant argues that the warrantless search of his vehicle following his arrest should be suppressed because no exception to the Fourth Amendment's warrant requirement justified the search.  The evidence, however, demonstrates that a cursory search of the vehicle was conducted, in part, upon Defendant's arrest with law enforcement officers having probable cause to believe the vehicle contained evidence of criminal activity, and was conducted fully after law enforcement officers sought and obtained Defendant's voluntary consent.  Additionally, the Government presented evidence that the vehicle would have been subject to an inventory search pursuant to a formal policy applicable to all vehicles taken into police custody.  As each of the foregoing bases to conduct a search of the vehicle qualify as established exceptions to the Fourth Amendment's warrant requirement, the motion to suppress the search will be denied.

A warrantless search is per se unreasonable under the Fourth Amendment.  Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).  "It is well settled, however, that a search conducted pursuant to consent is one of the specifically established exceptions to the search warrant requirement."  United States v. Givan, 320 F.3d 452, 459 (3d Cir. 2003) (citations omitted).  The Supreme Court has instructed that "when a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given."  Schneckloth, 412 U.S. at 222 (internal quotation marks and citations omitted).  Whether a party has voluntarily consented to a search request is determined from the totality of the circumstances.  Id. at 227.  The Third Circuit has explained as follows:

> [W]hether consent was given is to be resolved by examining all
> relevant factors, without giving dispositive effect to any single
> criterion.  Certain factors that courts consider in determining whether
> confessions were voluntary, such as the age of the accused, his
> education, his intelligence, whether he was advised of his
> constitutional rights, and whether the questioning was repeated
> and prolonged are relevant to [the] examination.

United States v. Kim, 27 F.3d 947, 955 (3d Cir. 1994) (internal citations omitted).  Although

knowledge of the right to refuse consent is one factor to be taken into account, "the government

need not establish such knowledge as the sine qua non of an effective consent."  Schneckloth,

412 U.S. at 227.  Moreover, the Fourth Amendment does not require that the Government advise

a suspect of his right to refuse consent before requesting such consent.  Kim, 27 F.3d at 955.

Similarly, the Government is not obligated to advise a detained suspect that he is "free to go" in

order for a consent search to be deemed voluntary.  Ohio v. Robinette, 519 U.S. 33, 40 (1996).

On the morning after Defendant had been taken into custody, officers asked Defendant

for consent to conduct a search of his vehicle.  (Tr. 34.)  Lieutenant Peifer testified that upon

request, Defendant executed a written consent form and agreed to the requested search of the

automobile.  (Id.)  Similar to the Court's finding that Defendant voluntarily provided statements

to officers after being given his Miranda warnings, upon consideration of the evidence, the Court

finds that Defendant knowingly, voluntarily, and intelligently gave his consent to search the

vehicle.

Even if the Court had found that Defendant did not voluntarily consent to a search of the

vehicle, the search would be upheld as a lawful inventory search conducted following the

impounding of Defendant's automobile.  It is well established that police officers may conduct

warrantless searches of vehicles and other property to protect police against claims of lost or

11

stolen property, and to protect officers from potential dangers, provided the inventory is

conducted in accordance with a written policy or standard procedures.  Colorado v. Bertine, 479

U.S. 367, 372 (1987); South Dakota v. Opperman, 428 U.S. 364, 371 (1976) (holding that

inventory searches represent a reasonable police intrusion and noting that "'[when] police take

custody of any sort of container . . . it is reasonable to search the container to itemize the property

to be held by the police'") (quotation omitted).  In this case, Defendant's vehicle was taken into

custody and impounded upon his arrest.  The evidence presented establishes that the ICAC Task

Force has a formal policy of conducting an inventory search of all vehicles taken into custody.

(Tr. 32.)  Accordingly, the Court concludes that the search of Defendant's vehicle was lawfully

conducted pursuant to a valid inventory search.[9]

Finally, the Court notes that it has long been settled law that police officers may lawfully

search a vehicle when they have probable cause to believe it contains evidence of criminal

activity.  United States v. Ross, 456 U.S. 798, 804-09 (1982).  Immediately following

Defendant's arrest, task force officers conducted a cursory plain-view search of the interior of

Defendant's vehicle, and identified bananas and wine – items Defendant had vowed to bring with

him to the planned meeting with his internet chat partner in Delaware County.  Taken together,

---

[9]       In his reply brief, Defendant asserts, without legal support, that because the
inventory produced as a result of the search did not specifically delineate all of the items seized
from the vehicle, the rationale for the exception does not exist and should not be relied on in
upholding the search.  Although the Court concedes that this argument has some force with
respect to whether the stated basis for the legality of the search is pretextual, Defendant has
provided no legal support for his claim that the failure to specifically list certain discovered items
on an inventory report ipso facto vitiates the validity of the inventory search that was conducted,
nor does it necessarily require suppression of the items seized during such inventory search.  In
any event, the Court has already found that Defendant knowingly and voluntarily consented to a
search of his vehicle, and that any items found in connection with this warrantless search were
lawfully seized on the basis of Defendant's consent.

Defendant's graphic chat sessions, his stated plan to travel to Delaware County to meet with his chatting partner, his agreement to bring with him wine, sex toys, lubricant, and bananas with a stated sexual function, and his arrival at the agreed-upon location, provided the officers with probable cause not only to arrest Defendant, but also with probable cause to search the vehicle without first seeking a warrant.[10]

For all of the foregoing reasons, Defendant's motion to suppress the seizure of evidence found during a consensual search of his vehicle will be denied.

> 2.    Motion to Suppress Search Warrant and Items Seized from Defendant's York County Residence.

Defendant has moved to suppress all physical evidence seized from his residence because certain information contained in the search warrant was factually incorrect.  Additionally, Defendant argues that the search warrant was overly broad in that it authorized the search of all

---

[10]    Moreover, the credible evidence presented to the Court establishes that the arresting officers did not, in fact, conduct a full search of the vehicle even though they could lawfully have done so at the time.  Instead, officers conducted a cursory search and identified certain items Defendant stated he would bring to Delaware County which were located in plain view on the passenger seat of Defendant's vehicle.  As with warrantless searches of vehicles where there is probable cause to believe that contraband or evidence of criminal activity will be found inside an automobile, it is well-established that officers are lawfully entitled to seize contraband or evidence of criminal activity found in plain-view without a warrant.  See Payton v. New York, 445 U.S. 573, 587 (1980) ("seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity").  The Supreme Court has found the plain-view doctrine applies with equal force in the context of items viewed and seized from an automobile.  Texas v. Brown, 460 U.S. 730, 743-44 (1983).  Furthermore, notwithstanding Defendant's argument that the cursory search of the vehicle was unlawful because he was arrested some distance away from the automobile, the Supreme Court has recently emphasized that once officers have probable cause to make an arrest, the officers may also lawfully search the vehicle to ensure their safety and preserve evidence, even where the defendant has been arrested and secured.  See Thornton v. United States, 541 U.S. 615, 622-23 (2004).  Accordingly, the cursory search of Defendant's vehicle conducted in the Applebee's parking lot was not constitutionally infirm.

computer and electronic equipment and did not specify the particular types of information that

could be searched for within the equipment.  These two arguments will be addressed in turn.

Defendant identifies two discrete inaccuracies that he claim cause the entire search

warrant to be rendered unconstitutional: (1) Detective Deery's inaccurate representation that she

identified the address of Plaintiff's residence from review of Defendant's Pennsylvania

operator's license; and (2) Detective Deery's inaccurate representation that Defendant placed a

cellular telephone call to her at 9:00 p.m., when in fact Detective Deery placed a call to

Defendant at that time.  (Doc. No. 34, 7-8.)  Additionally, Defendant argues that the probable

cause affidavit incorrectly indicates that Defendant admitted to performing sexual acts upon his

daughter at his residence and had purchased a doctor's kit used in conjunction with such acts.

(Id., 8.)  Defendant appears to assert that without the foregoing inaccurate statements, there was

no probable cause supporting a warrant to search Defendant's residence.  These arguments will

be addressed in turn.

In Franks v. Delaware, 438 U.S. 154 (1978), the United States Supreme Court held that

> where a defendant makes a substantial preliminary showing that a
> false statement knowingly and intentionally, or with reckless
> disregard for the truth, was included by the affiant in the warrant
> affidavit, and if the allegedly false statement is necessary to the
> finding of probable cause, the Fourth Amendment requires that a
> hearing be held at the defendant's request.

Id. at 155-56.  Only if a defendant makes the requisite substantial showing for a Franks hearing,

and, at such hearing, demonstrates by a preponderance of the evidence that material statements

contained in the affidavit are either recklessly or intentionally untruthful, "the fruits of the search

must be excluded unless the remaining content of the warrant is sufficient to establish probable

cause." United States v. Brown, 3 F.3d 673, 676 (3d Cir. 1993) (quoting Franks, 438 U.S. at 155-56) (emphasis added).

During the hearing held before the Court, Detective Deery acknowledged the factual inaccuracies contained in her affidavit of probable cause. Detective Deery testified that she obtained Defendant's address from a search of his vehicle registration records rather than from review of his driver's license, as she mistakenly represented in the affidavit. (Tr. 50-51, 59.) Additionally, she acknowledged that she had called Defendant at 9:00 p.m. on November 9, 2004, rather than the call having been placed by Defendant. (Tr. 61.) However, the undisputed evidence also demonstrates that Defendant did call Detective Deery at 7:18 p.m., 9:32 p.m., and one additional time that night. (Tr. 61-62; Def. Ex. 3.) The Court finds that the inaccuracy regarding the source of Defendant's address and the precise time of one phone call from him (during an evening in which he placed at least three telephone calls to Detective Deery prior to or during his drive to the Applebee's restaurant in Delaware County) do not undermine the substantial showing of probable cause set forth in the entire affidavit. Moreover, Defendant has made no showing, and the Court does not find, that Detective Deery's factual inaccuracies were intentional or in reckless disregard of the truth. Accordingly, the Court does not find that these minor inaccuracies require that the search warrant be suppressed.

The Court also rejects Defendant's complaints about Detective Deery's characterization of his statements regarding having had oral-genital contact with his six-year-old daughter and his reason for purchasing his daughter a doctor's kit. As evidenced from his testimony to this Court, Defendant continues to deny that his description of these events amounts to an admission of having performed sexual acts upon his daughter and obtaining the doctor's kit for the purpose of

using it in sex acts with his daughter.  The Court agrees with the Government that the statements,

which were given voluntarily in response to questioning during a custodial interview, speak for

themselves.  Detective Deery's characterization of the statements was not inaccurate, and in no

way impairs the validity of the search warrant.

Finally, Defendant argues that the warrant authorizing the search of his residence was

overly broad because it authorized executing officers to seize all computers, computer

accessories, and electronic equipment, without providing any express limitations or other

parameters to the search.  The Court finds that the list of items authorized to be seized, albeit

somewhat broad, was confined to those items on which images or evidence of child pornography

might be found, and was thus sufficiently particular.  Accordingly, the Court does not find that

the warrant was invalid as overly broad.

Even assuming the totality of the circumstances in this case did not persuade the Court

that probable cause existed to issue the warrant and that the warrant was not otherwise invalid for

lack of particularity, the evidence would not be excluded because the good faith exception to the

exclusionary rule applies to the facts of this case.  In United States v. Leon, 468 U.S. 897 (1984),

the Supreme Court held that evidence seized pursuant to a search warrant found to be

unsupported by probable cause is, nevertheless, admissible if the evidence was obtained by

officers acting in reasonable reliance on a search warrant issued by a detached and neutral

magistrate judge.  Id. at 922.  "The test for whether the good faith exception applies is 'whether a

reasonably well trained officer would have known that the search was illegal despite the

magistrate [judge's] authorization.'" United States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999)

(quoting Leon, 468 U.S. at 922, n.23).  The Third Circuit has identified four situations where an

officer's reliance upon a warrant would not be reasonable:  (1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) where the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function; (3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.  United States v. Hodge, 246 F.3d 301, 308 (3d Cir. 2001) (citation omitted).  The Court finds that none of these exceptions is applicable to the warrant at issue, and thus even if the warrant were technically defective or otherwise invalid, the executing officers could have relied upon the validity of the warrant in good faith, and thus suppression would be unwarranted.

## IV.    Conclusion

For all of the foregoing reasons, Defendant's pretrial motions to dismiss the indictment and to suppress his statements and evidence seized from his vehicle and residence will be denied. An appropriate order follows this memorandum.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 1:CR-05-214** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **WALTER HIMMELREICH,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

And now, this 16th day of June, 2006, upon due consideration, and for the reasons set forth in the within memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Dismiss the Indictment (Doc. No. 29) is **DENIED**.

2. Defendant's Motion to Suppress Statements (Doc. No. 31) is **DENIED**.

3. Defendant's Motion to Suppress Evidence (Doc. No. 33) is **DENIED**.


S/ Yvette Kane_____
Yvette Kane
United States District Judge