# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALTER J. HIMMELREICH, | : | |
| Petitioner | : | Criminal Action No. 1:05-cr-00214 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Respondent | : | |

## MEMORANDUM

On April 3, 2009, Walter Himmelreich filed a motion to vacate under 28 U.S.C. § 2255. (Doc. No. 135.) The Court issued a standard Miller-Mason notice of election, to which Himmelreich responded that he wished to withdraw his initial filing and file one all-inclusive petition. (Doc. No. 138.) On July 31, 2009, Himmelreich filed a new motion to vacate under 28 U.S.C. § 2255, which, after numerous extensions of time for the Government's response, is now ripe before the Court for disposition. Himmelreich also filed a motion to supplement his motion, which has not yet been ruled on. (Doc. No. 162.) For the reasons that follow, both motions will be denied.

## I.    BACKGROUND

On November 9, 2004, Himmelreich was arrested in Delaware County, Pennsylvania, after making arrangements to meet with a woman whom he believed would allow him to perform sex acts with her two minor daughters. The woman was an undercover agent, however, and Himmelreich was taken into custody when he arrived at the designated meeting place. After being informed of his <u>Miranda</u> rights, Himmelreich voluntarily waived those rights and gave a recorded statement to police in which he admitted that he had used the internet to discuss the possibility of engaging in sex acts with minor children. He also admitted that he had engaged in sexual contact with his six-year-old daughter and had taken nude pictures of her. A warrant to

search his home was issued on the basis of his confession. The subsequent search yielded evidence that he had sent the photographs to at least one other individual.

Himmelreich was indicted in federal court on June 1, 2005, for knowingly producing, possessing, and distributing child pornography. (Doc. No. 1.) He entered a plea of not guilty. (Doc. No. 15.) On August 9, 2005, Attorney Frederick Ulrich was appointed to represent Himmelreich. On October 21, 2005, Himmelreich moved to dismiss the charges for violation of the Speedy Trial Act, moved to suppress the confession as obtained in violation of the Fifth Amendment, and moved to suppress evidence as obtained in violation of the Fourth Amendment. (Doc. Nos. 29, 31, 33.) On June 16, 2006, the motions were denied. (Doc. No. 95.) On September 6, 2006, Himmelreich accepted a plea agreement, and two days later, he pleaded guilty to Count 1 of the Second Superseding Indictment: production of child pornography in violation of 18 U.S.C. § 2251(b). (Doc. Nos. 101, 103.) On December 18, 2006, Himmelreich was sentenced to 240 months imprisonment, a $1000 fine, a $100 special assessment, and $102 in restitution. (Doc. Nos. 113, 114.)

Himmelreich timely appealed the sentence on December 27, 2006. (Doc. No. 115.) In the appeal, Himmelreich argued that the search warrant used to seize evidence from his house was unconstitutionally vague, that his indictment violated the Speedy Trial Act, and that the Court's upward variance was unreasonable because it was inadequately explained. All arguments were denied, and the sentence was affirmed on March 27, 2008. (Doc. No. 134-2.)

## II. DISCUSSION

Himmelreich's § 2255 motion argues that his sentence should be corrected for numerous reasons. Though Himmelreich does not explicitly attribute the majority of his alleged errors to

ineffective assistance of counsel, the Court will favorably construe his *pro se* motion by interpreting the otherwise procedurally defaulted claims as ineffective assistance claims.[1] See Montgomery v. Pinchak, 294 F.3d 492, 500 (3d Cir. 2002) (requiring liberal interpretation of *pro se* litigant filings).

To obtain relief under § 2255 for an ineffective assistance of counsel claim, a defendant must demonstrate that 1) the attorney's conduct was deficient and 2) that he was prejudiced by the deficiency. United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To be deficient, defense counsel's performance must have fallen "below an objective standard of reasonableness." Outten v. Kearney, 464 F.3d 401, 414 (3d Cir. 2006) (citing Strickland, 466 U.S. at 687-88). There is a "strong presumption" that counsel acted reasonably, and "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90. In cases where the ineffective assistance of counsel claim involves a guilty plea, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). If the Court does

---

[1] A failure to do so might result in several of his claims being denied as procedurally defaulted. A claim is procedurally defaulted if it has not been raised on direct appeal. Hodge v. United States, 554 F.3d 372, 378-79 (3d Cir. 2009). A procedural default will be excused only upon a showing of "cause and prejudice" or actual innocence. Id. Though Himmelreich at points alleges "actual innocence," the record reveals that the nude photographs of his minor daughter were sent to another from his computer. His alleged lack of "mens rea" does not indicate innocence or excuse any procedural default. See United States v. Garth, 188 F.3d 99, 110 (3d Cir. 1999) ("[A] habeas petitioner can not circumvent the restrictions of the procedural default rule merely by asserting 'actual innocence' where the assertion is belied by the record."). By contrast, a successful claim of ineffective assistance of counsel will satisfy the "cause" prong of a defaulted claim. Id.

3

not hold an evidentiary hearing, all non-frivolous factual allegations must be taken as true. United States v. Dawson, 857 F.2d 923, 927 (3d Cir. 1988).

### A. Arguments Arising Prior to Entry of the Guilt Plea

The Court begins with consideration of the multiple allegations that Himmelreich's constitutional rights were violated in the pre-guilty plea phase of the proceedings. Specifically, Himmelreich raises the following arguments: the indictment was invalid because it did not state a specific date on which the misconduct allegedly occurred; the indictment violated the Eleventh Amendment; the indictment violated the Double Jeopardy Clause of the Fifth Amendment; his due process rights were violated because was not given a copy of the indictment and did not see the grand jury proceedings; his arraignment occurred too long after the indictment; no evidence related to the chain of custody of the evidence was presented at the suppression hearing; the Speedy Trial Act was violated; his person, vehicle, and home were improperly searched; the Government failed to turn over Brady evidence; Attorney Ulrich did not advise him of the possibility of an Alford plea; Ulrich did not present a key witness at the suppression hearing; the Interstate Agreement on Detainers Act ("IADA") was violated; and the officers conspired to and committed perjury at his suppression hearing.

The Court's analysis must begin by discussing the validity of the plea because a valid guilty plea waives all non-jurisdictional and not expressly-preserved claims occurring prior thereto. Washington v. Sobina, 475 F.3d 162, 165 (3d Cir. 2007) ("It is well established that a criminal defendant's unconditional, knowing and voluntary plea of guilty waives all non-jurisdictional issues.").

#### i. Waiver of Arguments Not Expressly Preserved in Guilty Plea

4

A guilty plea is deemed valid if it represents a "voluntary and intelligent choice among the alternative courses of action open to the defendant." Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998) (internal citations omitted). Notably, Himmelreich does not challenge his plea as coerced or involuntary. He alleges only that Ulrich was ineffective for failing to provide him "with an opportunity to take an 'Alford' plea."[2] (Doc. No. 140-2 at 7.) Himmelreich does not dispute that he was "fully apprised of the ramifications of his plea." United States v. Schweitzer, 454 F.3d 197, 202 (3d Cir. 2006) (requiring district court to advise a defendant of the consequences of a guilty plea prior to accepting the plea). He does not allege any misunderstanding or improper advice as to the plea agreement into which he actually entered. Indeed, the transcript reveals that the Court advised Himmelreich of the finality of his decision to plead guilty, of the constitutional rights he would be waiving, of the nature of the charges, of the maximum possible sentence, and of his waiver of rights not expressly reserved in the plea agreement. (Doc. No. 111.) The record also indicates that Himmelreich was precisely aware of the offense to which he was pleading guilty. (Id.) Counsel's failure to obtain or to advise Himmelreich of an Alford plea does not render his performance unreasonable where there is no basis to suspect the Government or the Court would have agreed to such a plea. Moreover, there is no probability that a lower sentence would have resulted had Himmelreich entered into a plea without admitting guilt. Therefore, the guilty plea will be deemed valid.

The plea agreement did expressly preserve the issues raised in the Court's June 16, 2006

---

[2] In North Carolina v. Alford, the Supreme Court held that "the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence." 400 U.S. 25, 36 (1970). The Court assumes that by the term "Alford plea" Himmelreich means a guilty plea that does not require him to admit guilt to the offense charged.

5

Order denying his motions to dismiss and to suppress—violations of the Speedy Trial Act, the Fifth Amendment right to remain free of self-incrimination, and the Fourth Amendment prohibition against warrantless searches. Accordingly, arguments relevant to the suppression hearing and these claims will be considered. All other arguments, however, must be denied as waived because they are non-jurisdictional and occurred prior to entry of the valid guilty plea. See, e.g., Washington, 475 F.3d at 166 (finding waiver of speedy trial rights); United States v. Al Hedaithy, 392 F.3d 580, 586 (3d Cir. 2004) (distinguishing a post-guilty plea challenge to the sufficiency of the indictment, which is not waived, to non-jurisdictional challenges to the indictment, which are waived); United States v. Fulford, 825 F.2d 3, 10 (3d Cir. 1987) ("[E]ntry of a guilty plea acts as a waiver of the provisions of the IADA.").

### ii. Arguments Not Waived by Guilty Plea

The Court turns now to those claims preserved by the plea agreement. To wit, Himmelreich argues that the indictment violated the Speedy Trial Act; the search of his vehicle violated the Fourth Amendment because the police lacked probable cause; the search of his home was unlawful because the search warrant was over-broad; Government witnesses committed perjury during the suppression hearing; the Government failed to disclose Brady evidence; and Ulrich failed to produce a key witness at the suppression hearing. (Doc. Nos. 95, 101, 166.)

Himmelreich has previously raised the arguments that the Speedy Trial Act was violated, that the search warrant was over-broad, and that the vehicle search was unlawful both in his pre-trial motions and on appeal after his pre-trial motions were denied by the Court. (Doc. Nos. 95, 134-2.) In many respects, he simply re-asserts the same arguments without new facts or

6

reasoning. To the extent Himmelreich contests the search warrant as over-broad, the vehicle search as non-consensual, and the finding that the Speedy Trial Act was violated by the passage of time between the state proceedings and federal proceedings, those claims will be dismissed as previously litigated. See United States v. Orejuela, 639 F.2d 1055, 1057 (3d Cir. 1981) ("Once a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. § 2255.").

Himmelreich does, however, present some new challenges to the suppression order and suppression hearing. He argues that the federal indictment was actually filed on or before January 18, 2005, over six months before the date listed on the docket entry. The foundation for this argument lies in Detective Deery's case notes stating that FBI Agent Sutherland told her on January 18, 2005, that "his office has indited [sic]." (Doc. No. 166 at 15-16.) From this new evidence, Himmelreich concludes that the Speedy Trial Act was violated, the Government committed a Brady violation, and the suppression order must be reconsidered. (Doc. No. 166 at 15-16.) These conclusions cannot be drawn simply from the case notes cited.

To begin, the docket clearly indicates that the federal indictment was filed on June 1, 2005. The date on the indictment also indicates that it was signed by the jury foreperson on June 1, 2005. (Doc. No. 1.) The filing date of the indictment cannot be effectively refuted by Deery's notes indicating that she had been told otherwise. Accordingly, Himmelreich's Speedy Trial Act claim that is founded upon the inclusion of the additional six months from January to June 2005 will be denied.

Moreover, Deery's case notes are not indicative of perjury, conspiracy, or a

Brady violation. The note can easily be explained as a shorthand way of indicating that the FBI had made the decision to pursue an indictment against Himmelreich as of January 2005, which she assumed would lead to an indictment. Further, the note does not impeach Deery's credibility or indicate inconsistent testimony because she did not give testimony related to the filing of the federal indictment. (Doc. No. 58 at 38-64.) Indeed, assuming the case notes were not disclosed, Himmelreich still has not met his burden of demonstrating a Brady claim. Evidence does not need to be disclosed under Brady unless it is favorable to and material to the defense. See Riley v. Taylor, 277 F.3d 261, 301 (3d Cir. 2001) (outlining the elements of a Brady claim as proof that the evidence was "(1) suppressed, (2) favorable, and (3) material to the defense"). As stated, the authoritative filing date for the Speedy Trial Act claims would always be the official filing date of the indictment, thus the notation made in Deery's case notes is not material to the defense. Nor does the information benefit the defense as impeachment evidence, as Himmelreich posits. Therefore, the failure to bring the statement to the attention of the Court is neither a Brady violation nor a suggestion of unreasonable performance on the part of Ulrich.

Himmelreich makes one additional pre-plea allegation to Deery's case notes. He alleges that Ulrich was ineffective for failing to present testimony from the lead investigator at the suppression hearing. Yet, Himmelreich does not explain what the officer's testimony would have revealed or how the testimony would have benefitted his case. Without at least asserting the facts to which the additional witness would have testified, the Court cannot determine whether Ulrich's decision was unreasonable or whether Himmelreich was prejudiced. Therefore, Himmelreich's claim that Ulrich should have produced another witness will be denied along with all other arguments related to the suppression hearing.

### B. Challenges to the Sentencing Proceedings

The Court turns now to those violations that Himmelreich alleges occurred during his sentencing hearing. Himmelreich alleges that his restitution payment plan is invalid. He argues that the sentence itself was unreasonable and inadequately explained as required by § 3553(b) of the Sentencing Guidelines. He contends that the confidentiality of his Pre-Sentence Report ("PSR") was not properly maintained and that he did not receive sufficient time to read it prior to sentencing. He asserts that Ulrich acted unreasonably by not raising certain objections to the PSR.

First, Himmelreich asserts that the Court sentenced him to a payment of restitution but failed to establish a payment plan in violation of United States v. Corley, 500 F.3d 210, 223-28 (3d Cir. 2007) *vacated on other grounds*, Corley v. United States, 129 S.Ct. 1558 (2009). This argument is meritless. Corley holds that a district court must set a restitution payment schedule itself and cannot delegate the duty to the Bureau of Prisons ("BOP"). Corley, 500 F.3d at 223. In Himmelreich's case, the Court ordered that he pay the restitution in "minimum monthly installments of no less than $50.00." (Doc. No. 114 at 5.) No abdication was made to BOP to determine his payment schedule. Indeed, as part of the plea, Himmelreich voluntarily agreed to make payments pursuant to the Inmate Financial Responsibility Program while in custody. (Doc. No. 101 ¶ 6.) This claim will be dismissed.

Himmelreich's claim that his sentence was unreasonable under United States Sentencing Guidelines § 3553(b)(2) is similarly meritless. Himmelreich raised this argument on direct appeal and lost the challenge. (Doc. No. 134-2.) In affirming the Court's sentence, the Third Circuit Court of Appeals found that the sentence imposed by the Court was reasonable, rational,

and adequately explained on the record. (Id.) Himmelreich provides no new reason why his sentence is unlawful; he merely reiterates the position, already raised and rejected, that the sentence was inadequately explained. Therefore, Himmelreich's § 3553(b) challenge to the reasonableness of his sentence will be denied.

Himmelreich also makes three objections to the PSR. He contends that it was not kept under seal, that he had inadequate time to read it in advance of sentencing, and that Ulrich was ineffective for failing to put forward all of his (Himmelreich's) objections to it.

The first argument will be denied because it is entirely unclear how any alleged failure to maintain the confidentiality of his PSR would result in his desired relief. To raise a right to § 2255 relief, there must be a reasonable probability that, but for the failure to keep the PSR confidential, Himmelreich's sentence would have been more favorable. A violation of confidentiality, assuming one did occur, had no impact on the Court's sentencing determinations.

Himmelreich's next contention is similarly unfounded. The sentencing transcript belies his contention that he was deprived of his right to read and to object to the PSR. Although he had received the amended PSR only a few days before the hearing, a recess was ordered specifically to allow Himmelreich time to discuss the PSR with his counsel and to ensure that he had no objections before proceeding. (Id. at 7, 26.) The record conclusively refutes Himmelreich's claim that he was denied the right to read and review the PSR.

With respect to Himmelreich's claim that Ulrich was ineffective for failing to raise all of Himmelreich's proposed objections, this claim must be denied, as well. Himmelreich does not enumerate the concerns he sought to raise but which Ulrich declined to put before the Court. Yet, Counsel cannot be deemed ineffective for failing to raise meritless objections, so the Court must

be able to examine and analyze those claims which Ulrich failed to raise at Himmelreich's request before it can find a successful ineffective assistance claim. See Parrish, 150 F.3d at 328 (counsel need not raise every claim suggested by the defendant). Even liberally interpreting Himmelreich's claims, he asserts only that counsel was ineffective for failing to raise the confidentiality issue or requesting more time for him to read the PSR, both of which are meritless, as discussed above.

The Court notes that Ulrich did successfully raise one challenge to the PSR (Doc. No. 120 at 3-6), and Himmelreich, when speaking on his own behalf, raised several objections that were not pertinent to the sentencing. (Id. at 14, 20-21.) Himmelreich's vague assertion that Ulrich failed to raise objections to "85 out of the 88 paragraphs" in the PSR is insufficient, without more, to indicate a right to relief. (Doc. No. 166 at 10.)

All arguments that the sentencing proceedings were unlawful will be denied.

### C.   Supplemental Petition

After the expiration of the statute of limitations for filing a § 2255 motion, but still prior to the Government's response to his motion, Himmelreich filed a motion to supplement his § 2255 motion. (Doc. No. 162.) In light of AEDPA's strict statute of limitations, the Court cannot consider the claims alleged in the supplemental motion without first determining whether the claims relate back to the initial motion. Once the Court determines whether the claims relate back to the initial motion, the Court will proceed to a merits analysis of the related claims.

Section 2255 motions may be amended or supplemented pursuant to Rule 15 of the Federal Rules of Civil Procedure. United States v. Thomas, 221 F.3d 430, 435-36 (3d Cir. 2000) (applying Federal Rule of Civil Procedure 15(a) applies to habeas proceedings). However,

AEDPA limits amendments that occur after the one-year statute of limitations. Only those amendments that relate back to or clarify the grounds for relief asserted in the initial motion may be raised after expiration of the limitations period. Hodge v. United States, 554 F.3d 372, 378 (3d Cir. 2009) (finding that claims may be added provided they "arise from the same conduct, transaction, or occurrence described in a timely filed 2255 motion"). A supplemental claim relates back to an initial claim if the two are "tied to a common core of operative facts." Id. In other words, a claim is untimely "when it is 'supported by facts that differ in both time and type from those the original pleading set forth.'" Id. (quoting Mayle v. Felix, 545 U.S. 644, 650 (2005)). If the claims relate back, the Court is nonetheless obligated to read the supplemental claims and to assure itself it does not "plainly appear . . . that the petitioner is not entitled to relief" prior to requiring the Government to respond thereto. Thomas, 221 F.3d at 437 (applying Rules Governing § 2255 proceedings to supplemental claims).

In his supplemental motion, Himmelreich raises three issues: that Ulrich was ineffective for failing to challenge the lifetime internet ban imposed as part of his sentence, that Ulrich was ineffective for failing to pursue a pure Sixth Amendment speedy trial claim in addition to the Speedy Trial Act claim, and that the Supreme Court's decision in Arizona v. Gant requires reversal of the Court's decision to suppress evidence discovered in the warrantless vehicle search.

As a preliminary matter, the Fourth Amendment argument was alleged in the initial motion and is meritless. The decision in Arizona v. Gant, 129 S.Ct. 1710 (2009), pertains to searches incident to arrest, whereas the search of Himmelreich's car was justified as a consent or routine inventory search. (Doc. No. 95.) Accordingly, Gant's holding that it is unlawful to

12

conduct a warrantless search incident to arrest where "the arrestee has been secured and cannot access the interior of the vehicle" does not impact the Court's decision on Himmelreich's unlawful search claims. Gant, 129 S.Ct. at 1714.

Turning to the first of the two new claims, the Court finds that the argument related to the internet ban does not relate back to Himmelreich's initial motion. The initial motion mentions nothing about the internet ban aspect of his sentence and conviction. Rather, it challenges the Court's determination of his prison time and implementation of a payment schedule. Challenges to the prison time, ban, and restitution amounts are entirely distinguishable. The invalidity of one does not implicate the validity of another. Additionally, the internet ban comes into play only as a condition of supervised release, which will not occur until after the sentence has expired. Though the challenge to the internet ban would have arisen at almost the same time as the challenge to the confinement, it is sufficiently distinct in type that it cannot be deemed to relate back to the claims Himmelreich raised in his initial motion. Accordingly, this supplemental claim must be dismissed as untimely.

The remaining claim, however, may be said to relate back to the initial petition. Both the Speedy Trial Act arguments raised in the initial challenge and the Sixth Amendment speedy trial claim raised in the supplemental challenge speak to the speed with which the Government's case against Himmelreich was conducted. Both claims stem from the same essential guarantee that Himmelreich is entitled to a speedy trial. Both claims require consideration of the reasons behind the delays incurred between indictment, arrest, and guilty plea. Both claims rely on the facts behind the delays in the prosecution of Himmelreich's case. Yet, even accepting that the claim relates back to Himmelreich's initial motion, a Government response is not required because

Himmelreich's direct Sixth Amendment claim is not only waived but is meritless. A Sixth Amendment speedy trial argument was not expressly preserved in the guilty plea. In fact, the Sixth Amendment was not invoked in Himmelreich's pre-trial motions. Moreover, <u>United States v. Battis</u>, 589 F.3d 673 (3d Cir. 2009), made clear that the delay in a Sixth Amendment speedy trial case runs from the time of the federal indictment or arrest, whichever is earlier, until trial. <u>Id.</u> at 678. Though no trial in this case occurred, the delay between indictment and plea agreement was only fifteen months.[3] A significant part of that delay was caused by the defense's pre-trial motions and motions to continue. Simply put, there was no untoward delay between the indictment and Himmelreich's plea that would give support to a Sixth Amendment claim. As stated above, counsel has no obligation to raise frivolous arguments, therefore this claim will be dismissed. <u>Parrish</u>, 150 F.3d at 328.

The Court finds that Himmelreich's supplemental § 2255 claims must all be denied as meritless or barred by the statute of limitations.

### III.    CERTIFICATE OF APPEALABILITY

In proceedings brought under 28 U.S.C. § 2255, an applicant cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued. Under 28 U.S.C. § 2253(c)(2), a court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." In other words, a COA should not issue unless "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

---

[3] As explained by this Court and the Third Circuit, Himmelreich's state arrest did not start the proverbial clock for purposes of determining whether his right to a speedy trial was violated. (Doc. Nos. 95, 134-2.)

The Court finds that reasonable jurists would not disagree with the Court's assessment of Himmelreich's claims. A COA will not issue in this case.

## IV. CONCLUSION

All of Himmelreich's grounds for relief stated in his motion to vacate, correct, or amend sentence, will be dismissed. Additionally, Himmelreich's motion to supplement his § 2255 motion will also be denied.

An order consistent with this memorandum will follow.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WALTER J. HIMMELREICH,** | : | |
| Petitioner | : | Criminal Action No. 1:05-cr-00214 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| Respondent | : | |

## **MEMORANDUM**

**AND NOW**, this 20th day of October 2010, upon consideration of Defendant Himmelreich's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 140) and motion to supplement petition (Doc. No. 162), **IT IS HEREBY ORDERED** that the motions are **DENIED. IT IS FURTHER ORDERED** that a certificate of appealability **SHALL NOT ISSUE**.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania